IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| BRYAN ALDRIDGE,<br><br>    Plaintiff,<br><br>v.<br><br>PULASKI COUNTY, ARKANSAS,<br>a Body Corporate and Politic,<br>RONALD LEE ROUTH,<br>in his individual capacity, and<br>RODNEY SHEPHERD,<br>in his individual capacity,<br><br>    Defendants | Case No.: 4:24-CV-23-BSM<br><br>***<u>*Jury Trial Demanded*</u> |

**FIRST AMENDED COMPLAINT**

NOW COMES Plaintiff, BRYAN ALDRIDGE, by and through his attorneys, LAUX LAW GROUP, and for his cause of action against Defendants, PULASKI COUNTY, ARKANSAS, a Body Corporate and Politic, RONALD LEE ROUTH, in his individual capacity and RODNEY SHEPHERD, in his individual capacity, states as follows:

Introduction

This is a civil rights action brought pursuant to 42 U.S.C. § 2000e, *et seq.* (Title VII of the Civil Rights Act of 1964 as amended) and 42 U.S.C. § 1983 in order to recover damages against Defendant, PULASKI COUNTY, ARKANSAS (hereafter "PULASKI CO."), RONALD LEE ROUTH (hereafter "ROUTH") and RODNEY SHEPHERD (hereafter "SHEPHERD") for the unlawful and conspiratorial discriminatory employment practices to which Plaintiff, BRYAN ALDRIDGE (hereafter "PLAINTIFF") has been subjected, said practices resulting in his unwarranted termination. PLAINTIFF has suffered various types of damages on account of the conduct herein alleged.

## JURISDICTION

1. Jurisdiction and venue of this Court are invoked pursuant to 42 U.S.C. § 2000e-5 and 28 U.S.C. §§ 1331 and 1391.  The unlawful employment practices and misconduct alleged to have been committed against PLAINTIFF was committed in the State of Arkansas, and in Pulaski County, Arkansas.

## PARTIES

2. At all relevant times, PLAINTIFF was and is a citizen of the United States of America, and he is, therefore, entitled to all legal and constitutional rights afforded citizens of the United States of America.  As a person of African American heritage, PLAINTIFF is a member of a class protected by Title VII.  At all relevant times, PLAINTIFF was an employee of Pulaski County Juvenile Detention Center (hereafter "PCJDC" or "the facility").

3. On June 20, 2023, PLAINTIFF filed charges of racial discrimination and retaliation against PULASKI CO. with the Equal Employment Opportunity Commission (EEOC) stemming from his unlawful February 9, 2023 termination from PCJDC, where he had worked since June 2004 without issue.  On October 11, 2023, the EEOC issued him a Dismissal and Notice of Rights ("Right to Sue Letter").  See Exhibit A.

4. PLAINTIFF filed the instant lawsuit within the requisite ninety (90) days of PLAINTIFF's receipt of his October 11, 2023 EEOC Right to Sue Letter.

5. At all relevant times, including February 9, 2023, PULASKI CO. was and is a public body corporate created by the General Assembly for the State of Arkansas pursuant to Ark. Code Ann. § 14-14-501.  PULASKI CO. owns and operates PCDJC,  a 48-bed juvenile detention facility located at 3001 W. Roosevelt Rd., Little Rock, Arkansas, and serving the most populous county in Arkansas.

6. Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees…and any agent of such person…" 42 U.S.C. § 2000e(b). An individual qualifies as an "employer" under Title VII if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment. *See, e.g., Garcia v. Elf Atochem North America*, 28 F.3d 446 (5th Cir. 1994); *Paronline v. Unisys Corp.*, 879 F.2d 100 (4th Cir. 1989).

7. PULASKI CO. is an employer with more than fifteen (15) employees and, at all relevant times, PULASKI CO. was PLAINTIFF's employer.

8. Prior to January 2023, ROUTH was the director of PCJDC and an employee of PULASKI CO. At all other relevant times, ROUTH was a private citizen. Prior to January 2023, SHEPHERD was the assistant director of PCJDC and an employee of PULASKI CO. After January 2023, SHEPHERD was the director of PCJDC and an employee of PULASKI CO.

**PERTINENT FACTS**

9. On June 28, 2004, PLAINTIFF was hired as a detention officer at PDJDC where he oversaw juveniles sent to the facility and generally helped maintain order within the facility. In 2010, PLAINTIFF was promoted to the supervisory position of Juvenile Detention Shift Supervisor where he was responsible for providing efficient management, supervision and control of PCJDC shift operations.

10. In April 2020, ROUTH was named interim director of PCJDC. Soon thereafter, ROUTH was appointed director of the facility, a position he occupied at all relevant times, including June 2022. As PCJDC director, ROUTH was responsible for the overall functioning of the facility.

11. In June 2022, SHEPHERD, assistant director of PDJDC, was ROUTH's direct subordinate. In June 2022, PLAINTIFF's chain of command in descending order was ROUTH, SHEPHERD and then PLAINTIFF, who supervised multiple detention officers.

### PLAINTIFF OBSERVES EVIDENCE OF SEXUAL ASSAULT AGAINST A JUVENILE COMMITTED BY ROUTH, AND PLAINTIFF REPORTS ROUTH TO PULASKI CO.

12. In May 2022, PLAINTIFF attended an informal meeting in ROUTH's office, along with Stacey Smith, ROUTH's assistant, SHEPHERD and ROUTH. During this meeting, PLAINTIFF, Ms. Smith and SHEPHERD saw a video on ROUTH's computer which depicted ROUTH approaching a juvenile at the facility and touching his genital area, which constitutes the sexual assault of a juvenile.

13. When asked by PLAINTIFF why he touched the juvenile there, ROUTH responded that he did it "to see if [the juvenile] was still hard."

14. Within a day or two of seeing the video in ROUTH's office, PLAINTIFF, still shaken by what he saw, reported ROUTH's misconduct to PCJDC supervisory staff.

15. Prior to June 1, 2022, PULASKI CO., through PCJDC, was aware of allegations of sexual misconduct committed by ROUTH against juveniles within the facility.

16. The PULASKI CO. did not initiate an investigation of the allegations against ROUTH in response to PLAINTIFF's reporting. Despite the serious conduct of which ROUTH was accused—conduct PLAINTIFF told PULASKI CO. was depicted in a facility video recording—ROUTH remained in place as the director of the facility for the remainder of May 2002, through all of June 2022 and well into July 2022.

### AFTER PLAINTIFF REPORTED ROUTH TO PULASKI CO. FOR SEXUAL ABUSE OF A JUVENILE, ROUTH CONTINUED TO COMMIT ACTS OF SEXUAL MISCONDUCT ON JUVENILES

17. Between June 18 and 19, 2022, after PLAINTIFF's reporting, ROUTH committed acts of sexual abuse on a juvenile(s) within the facility. Upon information and belief, this juvenile victim(s) reported ROUTH's criminal conduct to the Arkansas State Police (ASP).

18. On or about June 23, 2022, the ASP Crimes Against Children Division (CACD), began an investigation stemming from the complaint(s) of the juvenile victim(s) that ROUTH engaged in sexual misconduct at PCJDC the prior week.

19. On July 21, 2022, the allegations against ROUTH—which constitute criminal charges of Second Degree Sexual Assault in violation of Ark. Code Ann. § 5-14-125(a)(4)(A)(i) and Harassment against minors in violation of Ark. Code Ann. § 5-71-208(a)(5)—were referred to the Pulaski County Sheriff's Office (PCSO) for criminal investigation. Sgt. Terrance Mems was the assigned PCSO criminal investigator. In July 2022, ROUTH was placed on administrative leave but not terminated.

20. On or around July 23, 2022, as part of his PCSO criminal investigation of ROUTH, Sgt. Mems interviewed current and former PCJDC employees who knew and worked with ROUTH, and current and former juvenile detainees with whom ROUTH interacted.

21. The first juvenile questioned told Sgt. Mems that ROUTH took photographs of him, including during a mandatory strip search. This juvenile reported that ROUTH asked him questions about his genitalia and the genitalia of other juveniles at the facility.

22. The second juvenile questioned described to Sgt. Mems the sexual assault incident depicted on ROUTH's computer video which PLAINTIFF, Ms. Smith and SHEPHERD observed on ROUTH's computer, and which PLAINTIFF reported to PULASKI CO. back in May 2022.

23. PLAINTIFF was questioned by Sgt. Mems and told him about the video depicting the sexual assault of a juvenile by ROUTH that he, Ms. Smith and SHEPHERD observed on ROUTH's computer. Further, PLAINTIFF told Sgt. Mems that ROUTH admitted to purposefully touching the juvenile's genitals.

24. Several other individuals interviewed by Sgt. Mems provided personal accounts of witnessing ROUTH ask juveniles about the size of their genitals, witnessing him hug and kiss juveniles and other inappropriate actions, comments and situations.

25. On August 8, 2022, Sgt. Mems interviewed ROUTH who was accompanied by a criminal defense lawyer. ROUTH acknowledged the video observed by PLAINTIFF, Ms. Smith and SHEPHERD but claimed he did not touch the juvenile's genitals. ROUTH added that the video would have been reviewed by several staff members as a matter of course, intimating that everyone at the facility knew or should have known about what he did and took no issue.

26. On or around January 26, 2023, following his investigation, Sgt. Mems concluded that there was probable cause to arrest ROUTH for unlawful conduct occurring between May 16, 2022 and July 20, 2022.

27. In an affidavit dated January 26, 2023, Sgt. Mems described his investigation of ROUTH. In his affidavit, Sgt. Mems identified PLAINTIFF as providing him with incriminating statements about the video depicting ROUTH's sexual assault. Sgt. Mems mentioned in his affidavit that others at the facility had viewed the video showing ROUTH's sexual assault but he did not identify those staff members by name.

28. Sgt. Mems stated that several other PCJDC staff members viewed the video of ROUTH sexually assaulting the juvenile but they were not identified by name in his affidavit.

29. ROUTH resigned from his position as director of PCJDC shortly after his statement to Sgt. Mems.

30. On January 30, 2023, after his voluntary resignation, ROUTH was arrested by PCSO. ROUTH's arrest occurred more than eight (8) months after PLAINTIFF came forward regarding the video of ROUTH's sexual assault, and over six (6) months after the criminal case was referred to PCSO. The media immediately reported on ROUTH's arrest, and Sgt. Mems' affidavit went was published online for public consumption.

31. On February 1, 2023, ROUTH appeared in Pulaski County District Court and pleaded innocent to one (1) felony count of second-degree sexual assault and three (2) misdemeanor counts of harassment.

### PULASKI CO. TERMINATES PLAINTIFF EIGHT (8) DAYS AFTER ROUTH'S ARREST ON CHARGES OF SEXUAL ASSAULT OF JUVENILES AT THE FACILITY

32. On February 9, 2023, eight (8) days after ROUTH's arrest on charges of sexual assault, in a three sentence letter, SHEPHERD terminated PLAINTIFF after nearly twenty years on the job. SHEPHERD's February 9, 2023 termination letter read:

> At this time, it has been determined that you are no longer a go (sic) fit for the Pulaski County Detention Facility. Therefor (sic) have elected to cease your employment with the Pulaski County Detention Center effective immediately. I wish you luck in all your future endeavors.

33. On February 6, 2023, PLAINTIFF and two detention officers had an interaction with a violent juvenile, which was not uncommon for the facility. Because of the violent nature of the juvenile's conduct, restraint and isolation was necessary, and this was a common response to such conduct occurring at PCJDC historically. PLAINTIFF and the two officers all engaged in the same conduct while interacting with the juvenile.

34. On February 7, 2023, PCJDC began an investigation of the allegations against PLAINTIFF and the two officers. PLAINTIFF was terminated before the conclusion of the investigation of the alleged conduct. The two officers were not terminated.

35. Prior to PLAINTIFF's termination, there existed a pattern and practice advanced or tolerated by PULASKI CO. wherein white PULASKI CO. employees accused of similar or much worse misconduct than PLAINTIFF, who is black—including ROUTH—were not terminated or even disciplined prior to the completion of investigations based on the underlying allegations.

36. Upon information and belief, the allegations against PLAINTIFF were not sustained. Despite this exculpatory finding, PLAINTIFF remained terminated.

CONFLICTING REASONS FOR PLAINTIFF'S FEBRUARY 2023 TERMINATION

37. According to an official PCJDC document dated March 2, 2023, the reason that most closely describes the reason PLAINTIFF was terminated was "customer complaints." According to this official document, the "final incident that caused the discharge" was that a "compliant (sic) against [PLAINTIFF] was filed with the Arkansas State Police." According to this official PCJDC document, "[t]here was a compliant (sic) filed with the Arkansas State Police against [PLAINTIFF]. [PLAINTIFF] was placed on administrative leave pending the outcome of the investigation. At the conclusion of the investigation, [PLAINTIFF] was discharged."

38. According to an official PCJDC document dated March 24, 2023, the reason that most closely describes the reason PLAINTIFF was terminated was that he "failed to meet employer standards." According to this official PCJDC document, the "final incident that caused the discharge" was that PLAINTIFF, a PCJDC veteran of nearly 20 years, "was not a good fit for Juvenile Detention."

39. According to both the March 2, 2023 official PCJDC document and the March 24, 2023 official PCJDC document, there were not any witnesses to the alleged February 7, 2023 incident which led to PLAINTIFF's termination.

40. According to both sets of official PDJDC documents PLAINTIFF's termination did not involve the violations of any facility policies. According to both sets of official documents, PLAINTIFF was terminated by his supervisor, SHEPHERD.

41. According to both sets of official PCJDC documents, PLAINTIFF performed his job duties satisfactorily in the past. According to both sets of official documents, PLAINTIFF performed his job duties to the best of his ability. The information contained in both sets of official documents was provided by the same individual, PULASKI CO. employee, Jamie Martin.

<u>**COUNT I**</u>
**RACE DISCRIMINATION—RETALIATION**
**PULASKI CO.**

42. Plaintiff hereby incorporates and re-alleges the above paragraphs as though fully alleged in Count I.

43. Title VII of the Civil Rights Act of 1964 (as amended) is a federal law that prohibits employers from discriminating against employees on the basis of race. A plaintiff may prove intentional discrimination using either direct or circumstantial evidence. Evidence is "direct" if it establishes a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision.

44. The law prohibits punishing employees for asserting their rights to be free from employment discrimination including retaliation. Asserting these rights is called "protected activity." It is unlawful to retaliate against employees for participating in a complaint process.

45. Providing statements to law enforcement officers in the investigation of a felony is protected from retaliation under all circumstances.

46. Reporting sexual misconduct in the workplace is a protected activity. It is unlawful for an employer to retaliate against an employee for intervening to protect other persons from sexual harassment and/or sexual assault.

47. PLAINTIFF engaged in protected activity when he complained to PULASKI CO. in May 2022 about the sexual assault he observed ROUTH commit on the video recording.

48. PLAINTIFF engaged protected activity in June 2022 when he reported ROUTH's violations of law to Sgt. Mems during the CACD investigation.

49. Rather than commend PLAINTIFF for reporting ROUTH's criminal behavior, PULASKI CO., through its employees, agents and/or servants, including SHEPHERD, instead retaliated against him by fabricating a claim against him and terminating him. An employer may not fire, demote, harass or otherwise retaliate against an individual opposing discrimination or harassment.

50. These actions committed by PULASKI CO. constitute adverse employment actions. PULASKI CO. terminated PLAINTIFF because he complained to PDJDC about ROUTH's sexual misconduct and harassment.

51. Assuming PLAINTIFFS' termination was based on his conduct handling the violent juvenile on February 6, 2023, white similarly situated PULASKI CO. employees have engaged in similar employment conduct but were not summarily terminated like PLAINTIFF.

52. The deprivation of PLAINTIFF's constitutional rights which was committed by PULASKI CO. and its employees, agents and/or servants was unnecessary and unreasonable.

Therefore, PULASKI CO. is liable in damages to PLAINTIFF, including compensatory damages, actual damages, punitive damages, costs and attorney's fees.

## COUNT II
### CIVIL CONSPIRACY TO VIOLATE PLAINTIFFS' RIGHTS UNDER 42 U.S.C. § 1983
### ROUTH AND SHEPHERD

53. PLAINTIFF hereby incorporates and re-alleges the above paragraphs as though fully alleged in Count II.

54. To prove a conspiracy claim, a plaintiff must show that a defendant conspired with others to deprive him of a constitutional right, that at least one alleged co-conspirator committed an overt act in furtherance of the conspiracy and that the act injured him.

55. PLAINTIFF alleges herein that ROUTH and SHEPHERD conspired to terminate PLAINTIFF in retaliation for his reporting ROUTH's sexual misconduct to PCSO. ROUTH and SHEPHERD's acts here were outside the scope of their employment.

56. It is clearly established that PLAINTIFF has a constitutional right to be free from invidious discrimination.

57. The deprivation of PLAINTIFF's constitutional rights which was committed by ROUTH and SHEPHERD was unnecessary, unreasonable and willfully malicious. Therefore, ROUTH and SHEPHERD, and each of them, are liable in damages to PLAINTIFF, including compensatory damages, actual damages, punitive damages, costs and attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, BRYAN ALDRIDGE, by and through his attorneys, LAUX LAW GROUP, seeks the following relief for the unlawful employment practices and unconstitutional conduct described above:

1. That the Court declare PLAINTIFF has been subjected to unlawful discriminatory practices, and that the Court issue a declaratory judgment that the PULASKI CO. engages in discriminatory employment practices and retaliation;

2. That the Court issue an injunction for the purpose of prohibiting further acts of race discrimination in the future;

3. That the Court order the reinstatement of PLAINTIFF as First Shift Supervisor at the facility;

4. That Defendants be required to pay PLAINTIFF's compensatory damages, including lost wages, and emotional damages;

5. That Defendants be required to pay punitive damages;

6. That PULASKI CO. be required to pay reasonable costs and attorney fees; and

7. That PLAINTIFF receive any other equitable, legal and just relief as this Honorable Court deems appropriate.

Respectfully submitted,

Michael J. Laux
Michael J. Laux
E. Dist. Arkansas Bar No. 6278834
One of the Attorneys for PLAINTIFF
400 W. Capitol Avenue, Suite 1700
Little Rock, AR 72201
Telephone: (501) 242-0750
Facsimile: (501) 372-3482
E-mail: mlaux@lauxlawgroup.com
mikelaux@icloud.com