**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**BRYAN ALDRIDGE**                                                                         **PLAINTIFF**

**v.**                                   **CASE NO. 4:24-CV-00023-BSM**

**PULASKI COUNTY, ARKANSAS, et al.**                              **DEFENDANTS**

**<u>ORDER</u>**

Bryan Aldridge is suing Pulaski County, the Pulaski County Juvenile Detention

Center ("JDC"), Ronald Routh (the JDC's former director), and Rodney Shepherd (the JDC's

present director), for race discrimination, First Amendment retaliation, and civil conspiracy.

Defendants are moving for summary judgment on all claims. Doc. No. 73. Aldridge

concedes summary judgment on his race discrimination claim and summary judgment is

granted on his retaliation and civil conspiracy claims.

I. BACKGROUND

Aldridge's claims stem from his termination from the JDC, where he served as a

watch commander. *See* Statement of Undisputed Material Facts ("SUMF") ¶¶ 29–30, 33,

112, Doc. No. 75. The following preceded his termination.

In 2022, the Pulaski County Sheriff's Office received a report that the director of the

JDC, Ronald Routh, had sexually assaulted an inmate. *Id*. ¶ 42. Routh was placed on leave

and an investigation followed, during which several JDC employees, including Aldridge,

made incriminating statements against Routh. *Id*. ¶¶ 59–60. Aldridge informed the

investigators that he saw Routh touch an inmate's genitals and that Routh admitted that he

did so to "see if he was still hard." *Id*. ¶ 55.  A warrant was then issued and Routh was arrested. *Id*. ¶¶ 70, 76.  Aldridge's statements to investigators were included in the probable cause affidavit used to support the arrest warrant. *Id*. ¶¶ 71–75.  The media published the probable cause affidavit on January 30, 2023.  SUMF ¶ 79.

One week later, on February 6, 2023, Aldridge responded to an inmate's cell after the inmate, K.B., began yelling and repeatedly kicking his cell door.  *See* Video Footage ("Video") 0:00–0:54, Ex. 6, Doc. No. 73.  When Aldridge arrived at K.B.'s cell, he used foul language and threatened K.B. through the cell door  *Id*. 0:55–1:55.  For instance, he called K.B. "a bitch," stated that he "did not give a fuck," and told K.B. that K.B. "was not talking about shit." *Id*.  He told K.B. to "shut the fuck up" and that he "would get his ass bowed up." *Id*.  Minutes later, Aldridge entered the cell with two guards. *Id*. 1:55–5:00.  There are no cameras inside the cell but K.B. can be heard screamed and yelling "I can't fucking breathe." *Id*. 5:00–9:00.  Ultimately, K.B. was left alone in his cell.  *Id*. 11:00–15:26.  He filed grievances alleging excessive force against Aldridge and the other officers. *See* Ex. 19, Doc. No. 73.

The next day, Shepherd, who replaced Routh as director of the JDC, placed Aldridge on leave pending a state police investigation into the incident.  SUMF ¶ 99; Ex. 5, Doc. No. 73.  Shepherd terminated Aldridge two days later, before the state police concluded Aldridge had not used excessive force. *Id*. ¶¶ 111–12.  Aldridge alleges he was terminated because of his race and because he provided information in the Routh sexual assault investigation.  Defendants argue that Aldridge was fired for violating JDC policy even though he did not

use excessive force.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.* All reasonable inferences must be drawn in a light most favorable to the non-moving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III. DISCUSSION

A.     <u>Race Discrimination</u>

Summary judgment is granted on Aldridge's race discrimination claim because Aldridge has waived it. *See* Plf.'s Resp., Doc. No. 84; *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) (failure to oppose summary judgment waives claim).

B.     <u>Free Speech Retaliation</u>

Summary judgment is granted on Aldridge's First Amendment retaliation claims against Shepherd and Pulaski County because Aldridge's speech was not protected and

because Aldridge's altercation with K.B. severs any reasonable inference that his speech motivated his termination.

### 1. *Shepherd*

Summary judgment is granted on Aldridge's retaliation claim against Shepherd. Aldridge alleges that Shepherd fired him because he gave incriminating statements about Routh to investigators. Shepherd correctly points out that he is immune from this claim because Aldridge's statements to investigators was not protected speech.

Qualified immunity shields government officials from civil liability when their conduct does not violate a clearly-established constitutional right. *Saterdalen v. Spencer*, 725 F.3d 838, 841 (8th Cir. 2013). To show his constitutional rights were violated, Aldridge must demonstrate that (1) his speech was protected by the First Amendment; (2) the defendants took an adverse employment action against him; and (3) the protected speech caused the defendants' decision to take the adverse employment action. *See Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 654–55 (8th Cir. 2007); *Laney v. City of St. Louis, Mo.*, 56 F.4th 1153, 1157 n.2 (8th Cir. 2023) (but-for causation required). Since Aldridge was a public employee, he must also establish that he spoke as a private citizen on a matter of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).

a. Protected Speech

Summary judgment is granted on Aldridge's free speech claims against Shepherd because Shepherd is immune from this claim. This is the case because Aldridge's speech was not protected; therefore, Shepherd did not violate Aldridge's clearly-established right

to free speech. *Lyons v. Vaught*, 781 F.3d 958, 963 (8th Cir. 2015). Aldridge's statements to the investigators during the Routh investigation were not protected speech because he had an official responsibility to report Routh's actions and to cooperate with the investigation. *See Garcetti*, 547 U.S. at 424 (speech not protected if it owes its existence to "a public employee's official responsibilities."); *Lyons v. Vaught*, 875 F.3d 1168, 1173 (8th Cir. 2025) (critical question is whether speech is within scope of employee's duties).

As a watch commander, Aldridge was responsible for ensuring inmates were safe. *See* SUMF ¶ 36; Aldridge Dep. 78:16–25, Ex. 1, Doc. No. 73. Indeed, Routh's misconduct triggered Aldridge's duty to report. *See* JDC Policies and Procedures, Ex. 12, Doc. No. 73 (all JDC staff are required to report sexual abuse in the facility); *Lyons v. Vaught*, 875 F.3d 1168, 1174 (8th Cir. 2017) (speech is pursuant to employee's duties if it is "part and parcel" of employee's concerns about his ability to "properly execute his duties.") (citations omitted). Aldrige had specialized training in responding to sexual abuse, which the JDC expected him to use. Ex. 5, Doc. No. 73. When reports of abuse support criminal prosecution, the JDC calls in the Sheriff's Office to investigate, and employees are expected to cooperate. *Id*. During the Routh investigation, employee interviews were coordinated with JDC management and those employees' shifts were covered by other employees while statements were given. SUMF ¶ 47. For all of these reasons, Aldridge's participation in the investigation complied with his duty as a JDC officer. While the result is somewhat harsh, and Aldridge is commended for speaking out, no First Amendment claim arises from these facts. *See Buazard v. Meredith*, 172 F.3d 546, 549 (8th Cir. 1999) ("If [plaintiff's] superior

ordered him to lie and then demoted him for refusing, an injustice has been done . . . [b]ut it is not one actionable . . . on a free-speech theory.").

Aldridge's argument that reporting misconduct is not part of his job description is contradicted by the record. And, even if his argument was supported by the record, his statements to the investigators are still unprotected. *See Pottorf v. City of Liberty, Mo.*, No. 06-0246-CV-W-NKL, 2007 WL 2811098, at *8 (W.D. Mo. Sept. 24, 2007) (dispatcher's statements during investigation not protected even when participation was not listed as official duty or responsibility). Finally, although Aldridge reported Routh's misconduct to a JDC social worker before the investigation was initiated, this does not alter the outcome because he was obligated to do so. *See Bradley v. James*, 479 F.3d 536, 538 (8th Cir. 2007) (officer's statements that supervisor was drunk on the job not protected when given during investigation); *Knisley v. Lake Cnty.*, 180 F. Supp. 3d 639, 651(D.S.D. 2016) (deputy's reporting of her supervisor's abuse of federal grant money not protected speech when she had duty to do so).

b. Causation

Even if Shepherd were not immune, summary judgment would be appropriate because he has provided a legitimate reason for terminating Aldridge.

A burden-shifting analysis is applied to First Amendment claims that is similar to the analysis done in Title VII cases. *Henry v. Johnson*, 950 F.3d 1005, 1015 (8th Cir. 2020). Aldridge must first show that he "suffered an adverse employment action that was causally connected to [his] protected activity." *Id.* Then the employer must show a legitimate

6

nondiscriminatory reason for its actions. *Id.* If the employer succeeds, the burden shifts back to Aldridge to show this reason is pretext. *Id.*

Aldridge argues that he has met his initial burden by showing that he was terminated not long after he gave a statement to investigators in the Routh investigation. As explained above, Adridge's speech was not protected. Even if it was, Shepherd has provided a legitimate nondiscriminatory reason for terminating Aldridge: he violated JDC policy when he used profanity and a racial slur, threatened to harm an inmate and send him to the hospital; and confronted the inmate with physical force in his cell, rather than de-escalating. *See* Ex. 21, Doc. No. 73; *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006) (violation of policy is a legitimate, nondiscrimination reason).

Aldridge argues this is pretext for several reasons. First, he was fired just ten days after the media published the affidavit containing his statements to investigators. *Lissick v. Andersen Corp.*, 996 F.3d 876, 883 (8th Cir. 2021) (temporal proximity supports causation). This would be sufficient to overcome summary judgment but for the fact that the incident with the juvenile inmate occurred between the time the affidavit was published and the date of termination. This intervening event severs any inference of retaliation. *See Thomas v. Marshall Pub. Sch.*, 152 F.4th 884, 892 (8th Cir. 2025) (intervening acts that independently justify adverse action can sever inference of retaliation); *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (finding that the plaintiff's angry outburst around his co-workers severed causation); *Freeman v. Ace Tel. Ass'n*, 467 F.3d 695, 698 (8th Cir. 2006) (affirming summary judgment for defendant where plaintiff's deception constituted

7

"intervening events [that] undermine[d] any causal inference that a reasonable person might otherwise have drawn from temporal proximity"). Moreover, causation generally requires more than timing. *Johnson v. Schulte Hospitality Group, Inc*., 66 F.4th 1110, 1117 (8th Cir. 2023).

Second, Aldridge claims he was given shifting explanations for his termination. This argument is not convincing because defendants have consistently maintained that the primary reason for firing Aldridge was his policy violations during his altercation with K.B. *See* Exs. 5 and 21, Doc. No. 73; *E.E.O.C. v. Trans States Airlines, Inc.*, 462 F.3d 987, 995 (8th Cir. 2006) (discrepancies must be substantial); *see also Johnson v. Securitas Security Services USA, Inc.,* 769 F.3d 605, 613 (8th Cir. 2014) (no changing rationales even if employer expressed reasons for termination in alternate ways, so long as not substantial).

Third, Aldridge claims that other employees who cursed and used racial slurs were not fired. The problem with this argument is that Aldridge is not similarly situated to the comparator employees. *Williams v. United Parcel Serv., Inc.*, 963 F.3d 803, 809 (8th Cir. 2020) (comparator must be similarly situated in all relevant respects). Aldridge was not only fired for cursing and using a racial slur, but also for confronting an inmate with physical force and threatening to send him to the hospital. Nothing indicates his comparators engaged in substantially similar misconduct. *See Johnson,* 769 F.3d at 613 (plaintiff must show comparator that was not fired for the same conduct without distinguishing circumstances). The sexual abuse allegations against Routh are noted, but he is not a proper comparator. Routh was put on leave when the allegations surfaced, and the record shows he would have

8

been terminated had he not resigned first. Ex. 14, Doc. No. 73. Moreover, Routh is an improper comparator because he and Aldridge had different jobs and reported to different supervisors. *Nelson v. Lake Elmo Bank*, 75 F.4th 932, 940 (8th Cir. 2023).

Fourth, to the extent Aldridge argues that Shepherd acted out of the norm by referring the complaint against Aldridge to the state police and putting Aldridge on administrative leave; this is a business judgment not reviewed by courts. *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005 (8th Cir. 2012) (method and scope of internal investigations generally not reviewed by courts).

Finally, the close friendship between Shepherd and Routh does not support an inference that Shepherd fired Aldridge for making statements against Routh. It is true that the text messages between Shepherd and Routh reveal an intimate relationship; but none of the messages indicate Shepherd fired Aldridge for his statements during the investigation. The vast majority of the texts concern Routh's personal struggles and Shepherd's concern for Routh's well-being. The few messages that do mention Aldridge fail to show a retaliatory motive. In fact, Shepherd texted Routh that he "hated" to fire Aldridge, but he "had no choice." Ex. 10, Doc. No. 73.

### 2. Pulaski County

It appears that Aldridge waived his First Amendment retaliation claim against Pulaski County. *See* Plf.'s Resp. at 3 ("Plaintiff does not allege a *Monell* claim against Pulaski County."). Aldridge is not suing Shepherd in his official capacity and he cannot otherwise sue the County. *See Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (no vicarious

liability under section 1983).  Even if he did not waive this claim, there is no evidence showing a policy or widespread custom of firing employees for exercising their First Amendment rights.  *Luckert v. Dodge Cnty.*, 684 F.3d 808, 820 (8th Cir. 2012) (constitutional claims against county require official custom, policy, or practice of violations).  And even if there was, there was no underlying constitutional violation. *Estate of Aden v. City of Bloomington, Minn.*, 128 F.4 952, 960 (8th Cir. 2025).  Summary judgment is therefore granted.

C.    Civil Conspiracy

Summary judgment is granted on Aldridge's civil conspiracy claim because he has not shown that he was deprived of a constitutional right.  Aldridge claims that Routh and Shepherd conspired to deprive him of his First Amendment rights by terminating him because Aldridge provided incriminating statements against Routh.  To prove this claim, Aldridge must show that (1) Routh and Shepherd conspired with each other or others to deprive him of constitutional rights; (2) at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) the overt act caused Aldridge injury. *Burton v. St. Louis Bd. of Police Comm'rs*, 731 F.3d 784, 798 (8th Cir.2013) (citations omitted).  Summary judgment is granted on this claim because, as discussed above, Aldridge has not established that his constitutional rights were violated. *See id.* (plaintiff must prove deprivation of constitutional right to prevail on section 1983 civil conspiracy claim).

## IV. CONCLUSION

For these reasons, defendants' motion for summary judgment is granted.

IT IS SO ORDERED this 23rd day of July, 2026.

_____
UNITED STATES DISTRICT JUDGE